UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| ANMBREEN SHAH,<br>*Plaintiff,*<br><br>v.<br><br>SANTANDER CONSUMER USA, INC. d/b/a DRIVE FINANCIAL SERVICES, LP,<br>*Defendant.* | Civil No. 3:11cv00096 (JBA)<br><br>November 16, 2011 |
|---|---|

RULING ON DEFENDANT'S MOTION TO STAY AND TO COMPEL ARBITRATION

Plaintiff Anmbreen Shah brought an action against Defendant, Santander Consumer USA, Inc. ("Santander"), claiming that Defendant failed to follow procedures prescribed by Connecticut law in repossessing her automobile. Defendant moves to stay and to compel arbitration [Doc. # 17]. For the reasons that follow, Defendant's motion will be granted.

I.  Background

In 2005, Plaintiff purchased an automobile from SCJ, Inc. (d/b/a Acura by Executive) and, in connection with the purchase, she entered into a finance agreement titled "Retail Installment Contract" (the "Agreement," Ex. A [Doc. #17–2] to Def.'s Mem. Supp.) with Defendant's predecessor, Sovereign Bank. (Compl., Ex. C to Notice of Removal [Doc. #1] ¶ 7.) The Agreement contained an arbitration provision, which states:

> You and we can choose to have any particular claim or dispute arising from this Contract of whatever nature between you and us resolved by neutral binding arbitration. If we or you opt or choose arbitration with respect to a claim or dispute, neither you nor we will then have the right to litigate that claim in court or have a jury trial on that claim, or class action suit.

(Agreement at 2.)

In 2007, Plaintiff could no longer afford payments on the loan, and Defendant repossessed the vehicle. (Compl. ¶ 10.) In December 2010, Plaintiff brought an action against Defendant in the Connecticut Superior Court for the Judicial District of New Haven, alleging "unlawful and deceptive pattern of wrongdoing followed by [Defendant] with respect to the repossession and repossession sale of vehicles." (Compl. ¶ 1.) Specifically, Plaintiff alleges that Defendant failed "to sen[d] to Ms. Shah and numerous other Connecticut consumers a post–repossession notice and failed to properly disclose . . . important consumer rights required by the Uniform Commercial Code." (Compl. ¶ 2.) Plaintiff claims violations of the Uniform Commercial Code (Counts I through V), the Connecticut Retail Installment Sales Financing Act (RISFA) (Count VI), and the Connecticut Unfair Trade Practices Act (CUTPA) (Count VII). Defendant removed the suit to this Court on diversity grounds and now moves to stay and to compel arbitration.

II.  Discussion

The Federal Arbitration Act provides that

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. The Act establishes a "liberal policy in favor of arbitration as a means to reduce the costliness and delays of litigation." *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 665 (2d Cir. 1997) (internal quotation marks omitted) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see also Deloitte Noraudit A/S v. Deloitte Haskins & Sells*, 9 F.3d 1060, 1063 (2d Cir. 1993).

In this case, Plaintiff does not claim that the Agreement or its arbitration clause is invalid or unconscionable, or that she was fraudulently induced to sign the Agreement.[1] In determining the arbitrability of a dispute, a court must determine first "whether the parties agreed to arbitrate," and then, "whether the scope of the agreement encompasses the claims asserted." *Campaniello*, 117 F.3d at 666. Thus, the focus of the Court's inquiry is whether the claims asserted by Plaintiff are encompassed by the arbitration clause.

The Second Circuit articulated a three–part analysis in *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001) for addressing challenges to whether the scope of the parties' agreement covered the claims being asserted. First, "a court should classify the particular [arbitration] clause as either broad or narrow." *Id.* at 224. Second, if the court determines the clause to be narrow, it "must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause," but the issue will generally be deemed outside the purview of a narrow clause. *Id.* (internal citations and quotation marks omitted). Third, if the clause is determined to be broad, "there

---

[1]Plaintiff does allege, however, that Defendant has only produced a portion of the agreements that Plaintiff entered into when she purchased the vehicle and that a Buyer's Order (i.e. the contract of sale) and a "window form" were missing. (Pl.'s Opp'n at 6–7.) She speculates that those documents could change the analysis here, if, for example, the Buyer's Order contained provisions that would make the arbitration clause lacking in the requisite mutuality and thus invalid. (*Id.*)

Beyond the Agreement's acknowledgment that "[t]he information . . . on the window form for this vehicle is part of this contract" and that "[i]nformation on the window form overrides any contrary provision in *the contract of sale*" (Agreement at 1 (emphasis added)), however, the Agreement contains no language suggesting how either the contract of sale or the window form likely includes any specific language that contradicts or negates the operative Agreement provisions in this case.

arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal citations and quotation marks omitted).

    A.    Whether the Arbitration Clause is Broad or Narrow

Relying on the Ninth Circuit's decision in *Tracer Research Corp. v. National Environmental Services,* 42 F.3d 1292 (9th Cir. 1994), Plaintiff argues that the arbitration clause in this case should be construed narrowly. In *Tracer*, the arbitration clause at issue provided that "in the event any controversy or claim arising out of this Agreement cannot be settled by the parties [], such controversy or claim shall be settled by arbitration." *Id.* at 1295. To determine the scope of this clause, the court invoked an earlier holding in *Mediterranean Entertainment, Inc. v. Ssanyong Corp.*, 708 F.2d 1458 (9th Cir. 1983), that "an arbitration clause that covered disputes 'arising under' an agreement, but omitted reference to claims 'relating to' an agreement, covered only those disputes 'relating to the interpretation and performance of the contract itself.'" *Id.* The arbitration clause in *Tracer* omitted the phrase "relating to" and only contained "arising out of"; thus, the court concluded that "[t]he 'arising out of' language was of the same limited scope as the 'arising under' language" and required a narrow interpretation. *Id.*

Because the arbitration clause in this case similarly lacks the phrase "relating to" and only uses "arising from," Plaintiff contends that it should be interpreted narrowly. However, *Tracer* relied on *Mediterranean Entertainment* and on a now largely abrogated Second Circuit decision, *In re Kinoshita & Co.,* 287 F.2d 951 (2d Cir. 1961):

> We decline to overrule *In re Kinoshita*, despite its inconsistency with federal policy favoring arbitration, particularly in international business disputes, because we are concerned that contracting parties may have (in

4

theory at least) relied on that case in their formulation of an arbitration provision. We see no reason, however, why we may not confine *Kinoshita* to its precise facts.

*S.A. Mineracao Da Trindade–Samitri v. Utah Int'l, Inc.*, 745 F.2d 190, 194 (2d Cir. 1984); *see also Louis Dreyfus Negoce*, 252 F.3d 218, 225–26; *St. Paul Fire & Marine Ins. Co. v. Emp'rs Reinsurance Corp.*, 919 F. Supp. 133, 135 (S.D.N.Y. 1996) and note 3 *infra*.[2] Furthermore, as the First Circuit noted in *Dialysis Access Center, LLC v. RMS Lifeline, Inc.*, 638 F.3d 367 (1st Cir. 2011), other circuits have also rejected *Kinoshita* and found arbitration clauses similar to the one in *Kinoshita* to be broad in their scope. *Id.* at 381 (citing cases from the Third, Fifth, Sixth, Seventh, Eighth, and Eleventh Circuits). Therefore, the Court concludes that the absence of "relating to" language in the arbitration clause is immaterial.

The arbitration clause here—"any particular claim or dispute arising from this Contract of whatever nature" (Agreement at 2)—is similar to that in *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.* There, the arbitration clause applied to "any dispute arising from the making, performance or termination of this Charter Party," which the Second Circuit found connoted a broad arbitration clause,[3] 252 F.3d at 225–26, which it distinguished from the phrase "arising under":

---

[2] At oral argument, Plaintiff's counsel acknowledged that there is no current Second Circuit case law consistent with *Tracer*.

[3] In *Roby v. Corp. of Lloy's*, 996 F.2d 1353 (2d Cir. 1993), the Second Circuit found that there is "no substantive difference . . . between the phrases 'relating to,' 'in connection with' or 'arising from'" in the context of interpreting the arbitration clauses. *Id.* at 1361. Hence, not only does the phrase "arising from" support a broad classification, it is also functionally equivalent to "relating to."

In *In re Kinoshita & Co.*, 287 F.2d 951, 953 (2d Cir. 1961), an early decision dealing with the scope of arbitration clauses under the Arbitration Act, we intimated that the use of the phrase "arising under" an agreement, in an arbitration clause, indicated that the parties intended the clause be narrowly applied. We have, however, since limited this holding to its facts, declaring that absent further limitation, only the precise language in *Kinoshita* would evince a narrow clause. . . . To the extent a distinction exists between the present language of "arising from" and *Kinoshita*'s language of "arising under," we believe the distinction is more than just a semantic one, and only the latter phrase limits arbitration to a literal interpretation or performance of the contract.

*Id.* at 226.

> B. Whether the Claims at Issue Fall Within the Scope of the Arbitration Clause

Based on the conclusion that the arbitration clause here is broad in its scope, there is a "presumption of arbitrability" such that a claim on collateral matters would be arbitrable if it "implicates issues of contract construction or the parties' rights and obligations under it." *Louis Dreyfus Negoce S.A.*, 252 F.3d at 224 (internal quotation marks omitted) (quoting *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.*, 58 F.3d 16, 23 (2d Cir. 1995)).

According to Plaintiff, her action was brought "solely to address [the] lender's failure to follow procedures prescribed by Connecticut law when it repossessed her car in 2007" (Pl.'s Opp'n at 1), and at oral argument, Plaintiff's counsel argued that Plaintiff's "claim arises from Defendant's failure to adhere to the statutory requirements regarding notice." Plaintiff further asserts that she does not allege any breach of contract, and that "[t]he duties at issue . . . are imposed by law, not by contract[,]" as the Agreement is "notable for its complete silence as to the procedures and remedies attendant to repossession of collateral." (*Id.* at 1–2.) Thus, Plaintiff maintains that the arbitration clause does not apply because no

construction of the contract is required and the parties' contractual rights are not at issue. (*Id.* at 6.)

In support of her argument, Plaintiff cites *Rosen v. Mega Bloks Inc.*, No. 06 Civ. 3474(LTS)(GWG), 2007 WL 1958968 (S.D.N.Y. July 6, 2007) (recommendation adopted by 2008 WL 2810208 (S.D.N.Y. July 21, 2008)), in which the court found the identical arbitration clause in both plaintiffs' Employment Agreements to be "broad" but nonetheless denied the motion to compel arbitration because the lawsuit would not require contract construction or interpretation. *Id.* at *6, *10. There, the arbitration clause contained in the Employment Agreements was separate from the Stock Purchase Agreement ("SPA") which gave rise to the dispute. *Id.* at *9. The Employment Agreements merely made reference to the SPA without explicitly incorporating it, and "did not impose any substantive rights or duties on either party." *Id.* at *9, *10. The court in *Rosen* distinguished between "instances where a claim arising under one contract was deemed to come within the scope of an arbitration clause in another contract based upon the breadth of the latter contract's arbitration clause," such as in *Louis Dreyfus Negoce S.A.*, and instances where "two contracts were considered to be part of a single transaction or had been executed at the same time," as was the case there. *Id.* at *5. Because the rights and duties referred to in the Employment Agreements were created by the SPA, not the Employment Agreements themselves, "the [c]ourt's task [would be] to construe [the SPA], not . . . the Employment Agreements," *id.* at *10, or the parties' rights under the latter.

In the present case, however, there is only one agreement at issue, and neither the clause nor the Agreement refer to a separate contract that would affect the scope of coverage

7

of the arbitration clause. Thus, the *Rosen* reasoning, which declined to extend the reach of the arbitration clause in one agreement to a separate agreement, does not apply here.

In addition, the Second Circuit's holding in *Louis Dreyfus Negoce S.A.* mandates arbitration as long as the claim "implicates" contract construction or parties' rights and obligations. 252 F.3d at 224 (quoting *Collins*, 58 F.3d at 23). In other words, a claim does not have to require contract construction in order to be arbitrable. As the Second Circuit has explained, "[i]f the allegations underlying the claims 'touch matters' covered by the parties' sales agreements, then those claims must be arbitrated, whatever the legal labels attached to them." *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 846 (2d Cir. 1987) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 625 n.13 (1985)); *see also Roby*, 996 F.2d at 1361 ("[t]here is ample precedent that the scope of [arbitration clauses] is not restricted to pure breaches of the contracts containing the clauses."). Here, all of Plaintiff's claims are directed at misconduct in Defendant's repossession practices (Compl. ¶¶ 45–78), practices that "touch matters" of, or "implicate" the rights and obligations of the parties under the Agreement, namely Defendant's security interest in the vehicle upon debtor default.

Plaintiff argues that Defendant's duties at issue "are imposed by law, not by contract" and thus the claims are not covered by the arbitration clause. (Pl.'s Opp'n at 2.) However, whether the duties breached are contractual or statutory does not necessarily distinguish whether they fall under the range of arbitrable "collateral matters." In *JLM Industries, Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 173 (2d Cir. 2004), the plaintiff alleged that "a price–fixing conspiracy among the [defendants] undermined legitimate contractual relations between the parties." The plaintiff asserted that it suffered damages from "artificially high" price

terms and "overpayments" as a result of this conspiracy, and brought the claims under the Sherman Act. *Id.* at 175. The court found that a broad arbitration clause extended to these statutory claims, noting that the claims, despite being brought under the Sherman Act, arose out of the contracts and fell within the "collateral matters" that should be submitted to arbitration. *Id.* at 173–76. In the plaintiff's own words, "it could not have suffered [the] damages if it had not entered into the 'nearly 80' contracts with the [defendants]." *Id.* at 175. In *Mitsubishi Motors Corp.*, discussed in *JLM Industries*, the Supreme Court addressed a dispute between an automobile manufacturer and an automobile dealership, where the contract between the parties included a broad arbitration clause and the automobile dealership claimed that Mitsubishi had engaged in a price–fixing conspiracy and violated the Sherman Act. The Supreme Court held that the Sherman Act claims were arbitrable, because "insofar as the allegations underlying the [Sherman Act] claims touch matters covered by the [terms of the contract between the parties], the Court of Appeals properly resolved any doubts in favor of arbitrability." 473 U.S. at 617, 624 n.13; s*ee also Genesco, Inc.*, 815 F.2d 840, 848 (an alleged conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, was arbitrable).

Here, the Agreement at issue does not contain any language or terms regarding repossession. It creates an obligation to pay and specifies that the debtor is "giving [the creditor] a security interest in the vehicle being purchased." (Agreement at 2.) Although the right to repossess is generally a statutory creation or a common law right, *see, e.g.*, Conn. Gen. Stat. §§ 36a-785(a), 42a-9-610(a); *Shirley v. State Nat'l Bank.,* 493 F.2d 739, 742 (2d Cir. 1974) ("There is no dispute but that under the common law of Connecticut, the right of peaceful repossession without a hearing was recognized."), the contractual relationship and

9

the security interest, on which the repossession right is based, were created by the Agreement. *See Gaynor v. Union Trust Co.*, 216 Conn. 458, 467 (1990) (holding that the statutory authority to repossess an automobile upon buyer's default "required no special contractual language to communicate the consequences of a default in payments"). Following the rationale of *JLM Industries*, the Court concludes that the statutory claims in this case are "collateral matters" that "implicate" rights created by the Agreement, and thus, must be arbitrated. 387 F.3d at 175; *see also Louis Dreyfus Negoce S.A.*, 252 F.3d 218 at 224.[4]

III. Conclusion

For the foregoing reasons, Defendant's Motion to Stay and to Compel Arbitration is GRANTED. The case will now be administratively closed pending the final outcome of the arbitration. Either party has the right to have this case restored to the active docket by filing a motion to restore within 21 days of issuance of the arbitrator's final decision.


IT IS SO ORDERED.


____/s/_____
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 16th day of November, 2011.

---

[4] One set of statutes under which Plaintiff brought her claims, CUPTA, was also invoked by the plaintiff in *JLM Industries*. 387 F.3d at 168. The Second Circuit, after finding JLM's Sherman Act claims subject to arbitration, held that the state law claims (including the one under CUPTA), which were "resting on the same facts, and subject to the same broad arbitration clause," should also be submitted to arbitration. 387 F.3d at 183.